**Wali Abdul WILLIAMS, Plaintiff,**

v.

**NEW YORK CITY POLICE DEPARTMENT,
Defendant.**

**No. 94 Civ. 4942 (JGK).**

United States District Court,
S.D. New York.

June 7, 1996.

Wali Abdul Williams, Rahway, NJ, Pro Se.

Paul A. Crotty by Norma Kerlin, Corporation Counsel of the City of New York, New York City, for defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff, Wali Abdul Williams, brings this action *pro se*, pursuant to 42 U.S.C. § 1983, alleging deprivation of property without due process of law by the defendant, the New York City Police Department.[1] The defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing this case.

The facts, undisputed on this motion, are as follows, Williams was arrested on May 22, 1988, at or around West 159th Street and St. Nicholas Avenue in New York City and charged with criminal possession of a weapon. At the time of his arrest, an officer for the New York City Police Department seized and invoiced various items from Williams including $1,439.95, in cash. The officer also completed a property clerk's invoice for $12,955, money contained in a red zippered bag which was recovered near the site of the plaintiff's arrest.[2] At the time of his arrest, a copy of the invoice for the money found in the possession of the plaintiff was made available to Williams, but he refused the receipt. (Pl.'s Aff. ¶ 7.)

On June 14, 1988, a Grand Jury convened in New York County indicted Williams for criminal possession of a weapon in the third degree. In August, 1988, during pretrial proceedings, Williams made a motion that the money seized at the time of his arrest be suppressed and returned to him. In a response dated September 12, 1988, the state opposed the release of the money since it intended to introduce the cash as evidence against Williams at trial. On July 17, 1990, Williams pleaded guilty to the charge of criminal possession of a weapon.

Williams alleges that he was deprived of his personal property, the money seized at the time of his arrest, without due process of law and has commenced this action under 42 U.S.C. § 1983.

The defendant argues that it is entitled to summary judgment dismissing the plaintiff's claim as a matter of law, and that there are no disputed genuine issues of material fact that require resolution. In support of its motion, defendant argues that summary judgment should be granted in its favor for the following reasons: (1) any claim that Williams could allege pursuant to 42 U.S.C. § 1983 is untimely; (2) there was no due process violation because plaintiff neither fol-

---

1. 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

2. While the New York City Police Department claims that approximately $14,000 was recovered from the plaintiff and from the bag recovered near the site of his arrest; Williams claims that he was carrying over $22,000 in the red zippered bag. (Pl.'s Aff. ¶ 6.) The disagreement does not affect this motion.

lowed available procedures for return of the funds, nor pursued the adequate post-deprivation state court remedies available to him; (3) the New York City Police Department, the only defendant here, is not a suable entity in this action, and any claim against the City of New York, should be dismissed because the plaintiff has failed to demonstrate under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that any alleged constitutional violation resulted from an identified policy, custom, or practice of the municipality.

For the reasons that follow, the defendant's motion for summary judgment is granted.

## I.

■ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of sum-

mary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether summary judgment is appropriate, a court must resolve all ambiguities against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

■ If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

■ If the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.,* 475 U.S. at 586, 106 S.Ct. at 1356. The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. The nonmoving party may not rest upon mere allegations or denials of the moving party's pleadings. *Anderson,* 477 U.S. at 248–249, 106 S.Ct. at 2510–2511. Speculative and conclusory allegations are insufficient to meet this burden. *Allen v. Coughlin,* 64 F.3d 77, 80 (2d Cir.1995); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

## II.

Plaintiff's complaint has been construed to be a civil rights action pursuant to 42 U.S.C. § 1983. (Compl. ¶ 1.)

■ The statute of limitations applicable to all § 1983 actions in New York State is three years. *Okure v. Owens,* 816 F.2d 45, 47 (2d Cir.1987), *aff'd,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (holding that "the proper limitation to apply to all section 1983 claims in New York is three years, based on the state's general personal injury

statute, N.Y.C.P.L.R. § 214(5)"); *see Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir.1995).

The three year statute of limitations is computed from the date when the claim accrued to the date when the action is commenced in federal court by the filing of a complaint. Fed.R.Civ.P. 3; *Textile Museum v. F. Eberstadt & Co., Inc.*, 453 F.Supp. 72, 74–75 (S.D.N.Y.1978). When the plaintiff files a motion for leave to file in forma pauperis, the action is treated as commenced when the Clerk of the Court receives the complaint, not on the date when the complaint is filed in federal court. *Rosenberg v. Martin*, 478 F.2d 520, 522 n. 1a (2d Cir.) (Friendly, Ch.J.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). If in forma pauperis relief is subsequently granted, the *pro se* complaint is deemed filed when received by the *pro se* office. *Toliver v. County of Sullivan*, 841 F.2d 41 (2d Cir. 1988).

■ Williams signed the § 1983 complaint on February 24, 1994. It was received and filed in the *pro se* clerk's office on March 25, 1994, and filed in the United States District Court on July 8, 1994. The defendant argues that Williams' claim should be dismissed, because "(e)ven applying the earliest possible filing date in favor of plaintiff, the action was commenced more than three years after his cause of action accrued in 1988." (Def.'s Mem.Supp.Summ.J. at 7.)

Federal law governs the date of accrual of a § 1983 cause of action. *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994); *see also Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir.1995). An action brought pursuant to § 1983 accrues when the plaintiff "knows or has reason to know" of the harm. *Eagleston*, 41 F.3d at 871.

The defendant contends that the statute of limitations began to run on the date of Williams' arrest, May 22, 1988, because the plaintiff contends that he was deprived of the money on that date. The defendant argues that the statute of limitations accrues from this date, because Williams knew or had reason to know of his alleged injury—the seizure of the funds.

The plaintiff argues that he requested return of the property and was denied its return in the course of the criminal proceedings. Even assuming that the date of accrual is not the arrest date when the money was seized, but September 12, 1988, when the State opposed turning the money over to the plaintiff in the state criminal proceeding, the date the plaintiff urges, the plaintiff's claim would still be barred by the statute of limitations. There is no date to which Williams can point and rely upon for a date of accrual that would fall within the three year statute of limitations. The latest date Williams claims he became aware of the injury which is the cause of this action is September 12, 1988, when he learned that the state was declining to return the money to him. The commencement date of this action, March 25, 1994, when the plaintiff filed his motion for leave to file in forma pauperis with the *pro se* clerk's office, was well over three years from the date when the claim accrued.

In sum, considering the evidence in the light most favorable to the plaintiff, there is no set of facts under which the action was commenced within the three year statute of limitations for § 1983 claims under New York law. Consequently, the plaintiff's claim is time-barred and must be dismissed.

### III.

■ The plaintiff seeks the return of money which was seized incident to his arrest. He argues that he has been deprived of his property by the defendant without due process of law.

The defendant argues that Williams was afforded due process protection by the procedures adopted as a result of *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir.1972). In an unpublished order entered on July 15, 1974, pursuant to the Court of Appeals' decision in *McClendon*, Judge Lasker outlined the procedures to govern the Police Property Clerk's custody of seized property. *See Butler v. Castro*, 896 F.2d 698, 701 n. 1 (2d Cir.1990). Defendant states that this order "served as the official procedure governing the seizure and return of property by the

Police Department in 1988 when plaintiff surrendered his property, and in 1990, when criminal proceedings against him terminated." (Def.'s Mem.Supp.Summ.J. at 9.)

Under Judge Lasker's order, a demand for property will be timely, if it is made on the Police Property Clerk within ninety days after the termination of criminal proceedings. (70 Civ. 3851(MEL), ¶ 2(e).) The order requires that the procedures for demanding the return of property be attached to the voucher for seized property provided to the arrested person or written on the back of that voucher in bold letters. (¶ 2(d).) However, failure to produce the voucher will not preclude a lawful claim for the property or money. (¶ 6.)

 Williams does not dispute that he was given a Police Property Clerk voucher for the money that was actually seized from him. He refused to sign the voucher because he claimed that the amount of money was incorrectly listed. (Williams' 4/5/96 Aff. at ¶ 7). Hence, the New York City Police Department attempted to give the plaintiff the voucher containing notice of the procedures required under *McClendon* and the plaintiff declined. This is not a case like *Butler* where the plaintiff alleged that he never received a voucher. In *Butler*, the court found that the procedures—as followed in that case—deprived the plaintiff of an adequate state remedy for the deprivation of his property because the plaintiff was not provided with notice of the procedures to be followed. As Judge Glasser noted in *Leyh v. Property Clerk Of the City of New York Police Department*, 774 F.Supp. 742, 746 (E.D.N.Y.1991), it is significant that the plaintiff in *Butler* had not been issued a voucher by the Property Clerk and had no notice of the procedures through which to demand his property. As Judge Glasser explained, "The Second Circuit did not, however, invalidate the procedures set forth by Judge Lasker in his *McClendon* order … it merely found that failure to follow these procedures (by failure to issue a voucher to the claimant), coupled with the obsolete provisions of the Administrative Code, constituted a constitutional violation." *Leyh*, 774 F.Supp. at 746. In *Leyh*, the plaintiff contended that she was deprived of her property—an automobile—without due process of law. There, as in this case, the plaintiff did not dispute that she was issued a voucher for her property nor did she dispute that the Property Clerk had followed the *McClendon* procedures in its handling of the matter; hence Judge Glasser found her position to be fundamentally different from that of the plaintiff in *Butler*. The material facts of this case are similar to *Leyh*. Just as in *Leyh*, there is no constitutional defect in the *McClendon* procedures. *See Leyh*, 774 F.Supp. at 746.

Plaintiff's criminal proceedings terminated on July 17, 1990, when he entered a guilty plea to the charge of criminal possession of a weapon. Williams had until October 17, 1990 to demand return of the money from the New York City Police Department by following the *McClendon* procedures. Williams' failure to keep the voucher would not have precluded his lawful claim for the money, if a timely demand had been made. Although the plaintiff contends that he did make a demand for the return of the money by his application for return of the United States currency during the criminal proceeding, that motion did not satisfy the application procedures prescribed by *McClendon*. In order to satisfy the *McClendon* requirements, the demand had to be made on the Police Department Property Clerk within ninety days after the termination of criminal proceedings. There is no evidence that Williams made such a timely demand.

There is no evidence that Williams was deprived of his property without due process of law and no showing that the procedures required by *McClendon* were not followed by the Police Department Property Clerk's Office. Accordingly, Williams has failed to offer any evidence to show that he was deprived of property without due process of law.

### IV.

The defendant's final argument is that the plaintiff has failed to offer any evidence that his alleged constitutional violation resulted from an identified policy, custom, or practice of the City of New York. Williams has sued only the New York City Police Department. As an agency of the City of New York, the

Police Department is not a suable entity. *East Coast Novelty Company v. City of New York*, 781 F.Supp. 999 (S.D.N.Y.1992). As Judge Sweet explained, "The New York City Charter provides: All actions and proceedings for the violation of any law shall be brought in the name of City of New York and not in that of any agency, except where otherwise provided by law. N.Y. City Charter § 396." *East Coast Novelty Company*, 781 F.Supp. at 1010.

Even construing the complaint as an action against the City of New York, the plaintiff must establish that he was unconstitutionally treated and that the constitutional violation resulted from an identified policy, custom, or practice of the municipality. *See Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. In *Monell*, the Supreme Court held that "the language of § 1983 compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.

Williams has failed to present evidence of a constitutional violation in his case, and that failure would preclude municipal liability. In any event, Williams has failed to present any evidence that any alleged constitutional violation was the result of an official policy, custom, or practice of the City of New York. The procedures that the New York City Police Department followed pursuant to Judge Lasker's order, in response to the Court of Appeals opinion in *McClendon* were constitutional. "[T]he actual procedures followed by the City with regard to the disposition of seized items are constitutionally valid." *Butler*, 896 F.2d at 699. Therefore, there is no evidence of an unconstitutional policy, custom, or practice that would subject the municipal defendant to liability.

## V. Conclusion

For the reasons stated above, the defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED.**